**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 28, 2022**

# In the Court of Appeals of Georgia

A22A0985. CITY OF ROSWELL v. HERNANDEZ-FLORES.

MILLER, Presiding Judge.

Clementina Hernandez-Flores was struck by a car driven by a suspect fleeing from City of Roswell ("the City") police officers, causing her to suffer major injuries. After she filed a negligence suit against the City, the City moved for summary judgment on sovereign immunity grounds. The trial court denied the motion after concluding that issues of fact remained as to whether the City waived sovereign immunity through its law enforcement officers' "use of a vehicle," and the City seeks interlocutory review of that ruling. Because the record conclusively establishes that Hernandez-Flores' injuries did not arise from law enforcement's "use of a vehicle," we conclude that she has failed to show a valid waiver of sovereign immunity, and so we reverse the trial court's denial of summary judgment.

"On appeal from the denial or grant of summary judgment, the appellate court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Macon-Bibb County v. Kalaski*, 355 Ga. App. 24 (842 SE2d 331) (2020).

So viewed, the record shows that, in March 2015, City of Roswell law enforcement officers were engaged in a vehicle pursuit of a suspect fleeing after committing a home invasion. Officer Lorne Alston, who was employed by the City of Roswell Police Department, was driving his patrol car when he learned of the high-speed pursuit in progress. Alston realized that the pursuit was heading towards him, and he drove to a nearby intersection ahead of the chase, parked and exited his patrol car, and obtained "Stop Sticks"[1] from the trunk. While standing behind his car, Alston deployed the Stop Sticks on the road. The suspect swerved to avoid the Stop Sticks and lost control of his car, striking Hernandez-Flores, who was walking on the sidewalk. As a result, Hernandez-Flores sustained multiple permanent injuries to her head, neck, and leg, and she also suffered permanent memory loss.

---

[1] "Stop Sticks" is the brand name for tire-deflating spikes that are occasionally used by law enforcement to end a police pursuit.

Hernandez-Flores filed suit against the City, asserting a claim for negligence. The City moved for summary judgment on sovereign immunity grounds, and Hernandez-Flores subsequently amended her complaint to assert that Alston was negligent in his use of his patrol car and that sovereign immunity was thus waived in accordance with OCGA § 33-24-51. The trial court denied the City's motion for summary judgment, finding that issues of fact remained as to whether Alston's "efforts to assist in the chase by using his patrol car to drive to the intersection, his use of the police car to monitor the chase on his radio, his use of the Stop Sticks mounted in the police car's trunk and his deployment of the Stop Sticks while standing behind the police car" constituted "use of the police car" for purposes of waiving sovereign immunity. We granted the City's application for interlocutory review of this ruling.

On appeal, the City argues that the trial court erred in concluding that material fact issues remained as to whether Alston's actions during the incident constituted the "use" of a vehicle so as to waive the City's sovereign immunity. We agree.

> Sovereign immunity is a threshold issue that the trial court is required to address before reaching the merits of any other argument. It is axiomatic that the party seeking to benefit from the waiver of sovereign immunity bears the burden of proving such waiver. Whether sovereign

3

immunity has been waived under the undisputed facts of this case is a question of law, and this Court's review is de novo.

(Citation omitted.) *Chatham Area Transit Auth. v. Brantley*, 353 Ga. App. 197, 199 (1) (834 SE2d 593) (2019).

"Under Georgia law, municipal corporations are protected by sovereign immunity pursuant [to] . . . Article IX, Section II, Paragraph IX [of the Georgia Constitution], unless that immunity is waived by the General Assembly." *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015). See also OCGA § 36-33-1 (a) ("[I]t is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages."). Georgia law provides that municipal corporations waive immunity "for a loss arising out of claims for the negligent use of a covered motor vehicle[.]" OCGA §§ 33-24-51 (b); 36-33-1 (a). In order to establish that sovereign immunity has been waived, Hernandez-Flores must therefore prove that her claim arose from the use of a municipal automobile – that the vehicle "was both the cause in fact and the proximate cause of the injury." (Citation omitted.) *Polk County v. Ellington*, 306 Ga. App. 193, 198 (1) (702 SE2d 17) (2010).

A determination of whether an event arises from the "use" of a motor vehicle depends largely on the circumstances, and a bright-line definition is elusive. But statutes that provide for a waiver of sovereign immunity, such as OCGA § 33-24-51, are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver. . . . [I]n construing the meaning of "use," we have explained that the question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the motor vehicle *as a vehicle*. However, while the term does extend beyond actual physical contact, it does not imply remoteness. And this is reflected in our case law in that when we have found a waiver of sovereign immunity for the "use" of a motor vehicle, it has concerned motor vehicles that were actively in use when the injury arose[.] (Citations and punctuation omitted; emphasis in original.) *Bd. of Comm. of Putnam County v. Barefoot*, 313 Ga. App. 406, 408-409 (1) (721 SE2d 612) (2011).

To meet this burden, Hernandez-Flores alleged that Alston used his car as a vehicle when he (1) monitored the high-speed chase while in the car; (2) stored the Stop Sticks in the trunk of the car; and (3) stood behind the car as he deployed the Stop Sticks. When we consider Hernandez-Flores' injury, we conclude that none of these activities, either considered together or in isolation, constitute the "use" of an automobile required to waive sovereign immunity.

First, Alston's use of his patrol car to assist the pursuit, follow the pursuit on his radio, and drive to the intersection is too attenuated and remote from the harm to Hernandez-Flores to waive immunity, particularly since the car had already been parked on the side of the road at the time of the incident. We have previously held that "use of a motor vehicle" means "motor vehicles that were actively in use when the injury arose." (Citation omitted.) *Wingler v. White*, 344 Ga. App. 94, 101 (1) (808 SE2d 901) (2017). Alston was not actively using his vehicle in this manner at the time Hernandez-Flores' injury occurred, and so this use of a vehicle is not sufficient to constitute waiver. See, e.g., *Campbell v. Goode*, 304 Ga. App. 47, 50-51 (2) (695 SE2d 44) (2010) (no waiver found under OCGA § 33-24-51 because any alleged negligence that happened during a police officer's pat-down search of a robbery suspect was unrelated to the officer's prior use of his vehicle to arrive on the scene).

Second, Alston's storage of the stop sticks in his car's trunk also does not give rise to a waiver of sovereign immunity. In *Ellington*, supra, we stated that

> we decline to hold that the use, failure to use, or misuse of emergency
> medical or safety equipment arises out of the maintenance or operation
> of a county vehicle merely because such equipment is stored or
> transported on, is removed from, or is left off of, such a vehicle. The
> operation or maintenance of any motor vehicle, as used in [OCGA § 33-

6

24-51], has nothing to do with whether certain rescue equipment was present on a county vehicle.

(Citations and punctuation omitted.) *Ellington*, supra, 306 Ga. App. at 199 (1). Additionally, we note that it was Alston's actual use of the Stop Sticks that allegedly led the fleeing suspect to injure Hernandez-Flores, not his storage of the Stop Sticks in his car. Alston's alleged tortious conduct thus did not "originate in" or "flow from" the fact that the stop sticks were stored in the car, nor was such storage the direct cause of Hernandez-Flores's injuries. See *Harry v. Glynn County*, 269 Ga. 503, 504 (1) (501 SE2d 196) (1998) (transportation of a patient by an ambulance did not waive sovereign immunity because this use of the vehicle did not play a part in causing the patient's injuries, which stemmed from a paramedic's misdiagnosis and not the ambulance transport itself); *Tittle v. Corso*, 256 Ga. App. 859, 864 (2) (569 SE2d 873) (2002) (sovereign immunity was not waived for alleged injuries caused from a deputy pulling up in a patrol car and assaulting the plaintiff while placing him against the hood of the car because the car was "only remotely related to the deputy's alleged tortious conduct"). Compare with *McElmurray v. Richmond County*, 274 Ga. App. 605, 613 (2) (618 SE2d 59) (2005) (sovereign immunity was waived where government vehicles sprayed sewage sludge that caused the plaintiffs' injuries).

Next, the fact that Alston was standing behind the parked car when he deployed the Stop Sticks also does not mean the car was "in use." Our decision in *Ankerich v. Savko*, 319 Ga. App. 250 (734 SE2d 805) (2012), is instructive on this point. In *Ankerich*, a law enforcement officer was standing in an intersection directing traffic with her patrol car parked less than 20 feet away with the lights activated. Id. at 250-251. The officer signaled a bus to enter the intersection, which struck a car the officer had not seen. Id. Although the patrol car was nearby with lights activated, we found it was not in use because it was used as a stationary "ancillary prop" to assist the police officer in directing traffic and was not used *as a vehicle*. Id. at 253-255 (1). This situation is additionally analogous to that in *Gish v. Thomas*, 302 Ga. App. 854, 861 (2) (691 SE2d 900) (2010). In *Gish*, a deputy sheriff transporting a suicidal detainee left both the detainee and a loaded gun in a patrol car, and the detainee used the gun to commit suicide. Id. at 855-857. The detainee's estate sued claiming, among other things, that sovereign immunity had been waived by the deputy's negligent use of the patrol car. We found that the patrol car was not in use "as a vehicle" for the purpose of waiving immunity because the car was "essentially being used as a holding cell." Id. at 861 (2); see also *McBrayer v. Scarborough*, ___ Ga. App. ___ (874 SE2d 146) (2022) (immunity was not waived for a police suspect who died

8

while being held in an inoperative police car that was not being used as anything other than a holding cell at the time of the suspect's death). We have concluded similarly in numerous other cases that police officers using their vehicles as static props does not constitute using their vehicles "as vehicles." See, e.g., *Williams v. Whitfield County*, 289 Ga. App. 301, 302-305 (656 SE2d 584) (2008), superseded by statute on other grounds, as stated in *Columbus Consolidated Govt. v. Woody*, 342 Ga. App. 233, 237 n.4 (802 SE2d 717) (2017) (large excavator on the side of the road used to warn motorists of a road closure was not used "as a vehicle" because it was "merely present as a static physical mass"); *Saylor v. Troup County*, 225 Ga. App. 489, 490 (484 SE2d 298) (1997) (sovereign immunity was not waived for an injury caused by a swing blade attached to a police car because the car was "inoperative, [and] parked off the roadway with its engine not engaged"). Additionally, the fleeing suspect also allegedly swerved to avoid the stop sticks, not Alston's vehicle, and thus, the vehicle's presence at the scene did not directly contribute to the accident and Hernandez-Flores' injuries.[2] Thus, similarly, here, the fact that Alston deployed the

---

[2] For this reason, Hernandez-Flores's reliance on our decision in *DeKalb County School Dist. v. Allen*, 254 Ga. App. 66 (561 SE2d 202) (2002), is misplaced. In *Allen*, the plaintiff's daughter was killed when she was crossing the street after attempting to board a school bus which turned out not to be hers. *Allen*, supra, 254 Ga. App. at 66-68. We concluded that the school bus was "in use" at the time of the

Stop Sticks while standing behind his vehicle does not mean that he was using his car as a vehicle

Finally, we again emphasize that "statutes that provide for a waiver of sovereign immunity, such as OCGA § 33-24-51, are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver." (Citation omitted; emphasis in original.) *Barefoot*, supra, 313 Ga. App. at 408-409 (1). Thus, even if we consider the entirety of the circumstances and all of these alleged uses of Alston's vehicle together, we cannot say that any use of Alston's patrol car "as a vehicle" was sufficiently related to Hernandez-Flores' injuries to constitute waiver of sovereign immunity.

Our General Assembly has recognized "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." OCGA § 50-21-21 (a). It has also determined, however, that such concerns must yield to the "public good" and "public need" for the "broad range of services and . . . functions" provided by governmental employees, "regardless of how

incident because it was operational , and we concluded that such use was related to the daughter's death because "[b]ut for the bus's presence, the child would not have exited her mother's car and the accident would not have happened." Id. at 70 (1). In this case, Alston's vehicle did not play any such key role in causing the actual accident that caused Hernandez-Flores' injuries.

10

much exposure to liability may be involved," id., and we are bound to defer to the decisions of that body. Because Alston's patrol car was not in use "as a vehicle" for the purpose of waiving sovereign immunity at the time that Hernandez-Flores was injured, we reverse the trial court's denial of summary judgment.

*Judgment reversed. Rickman, C. J., and Pipkin, J., concur.*